UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORDELLUS MCMURTRY, N-81629, ) | |
| ) | |
| Plaintiff, ) | Case No. 18-cv-2176 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| DR. SALEH OBAISI, WEXFORD ) | |
| HEALTH SOURCE, INC., WARDEN ) | |
| RANDY PFISTER, ANNA MCBEE, ) | |
| JASON DUNN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### MEMORANDUM OPINION AND ORDER

On July 1, 2020, Plaintiff Cordellus McMurtry filed a motion for substitution of a party and a determination of good cause. *See* Dckt. No. 93. Plaintiff basically asks this Court for leave to substitute the estate of Dr. Obaisi as a defendant in place of Dr. Obaisi, who passed away on December 23, 2017. *See Rodriguez v. Obaisi et al.*, 16-cv-10427 (N.D. Ill.) (Dckt. No. 61-1). The motion is respectfully denied.

Plaintiff filed the complaint in this case on March 26, 2018, about three months after Dr. Obaisi passed away. *See* Dckt. No. 1. Plaintiff is incarcerated at the Stateville Correctional Center. He alleges that Dr. Obaisi violated his rights under the Eighth Amendment by failing to properly treat his eye condition. He claims that the lack of proper care caused him to develop glaucoma, leading to irreversible eye damage. *Id.* at 8.

Less than one month after the filing of the complaint, Judge Tharp (the presiding judge before reassignment) drew attention to the fact that Dr. Obaisi had passed away. On April 18, 2018, Judge Tharp entered a minute order stating that the "Court is aware from other cases that

Dr. Obaisi, named as a defendant in the pro se complaint, is deceased." See Dckt. No. 11. The Court pointed to a Suggestion of Death filed in another case: "Information relating to arrangements that Dr. Obaisi's estate has made regarding service of process and substitution of a representative of the estate are included in the Suggestion of Death filed in *Rodriguez v. Obaisi et al.*, No. 16 CV 10427 (N.D. IL), Dkt. No. 61." *Id.* The Court mailed notice. *Id.*

Meanwhile, Judge Tharp promptly appointed counsel. The first assignment of counsel took place on April 4, 2018, about a week after the filing of the complaint, and two weeks before the Court highlighted the passing of Dr. Obaisi. *See* Dckt. No. 7. But the assignment didn't last long. Judge Tharp allowed the attorney to withdraw due to a conflict of interest. *See* Dckt. No. 10.

On April 18, 2018, the same day (and in the same Order) that the Court highlighted the passing of Dr. Obaisi, the Court appointed a second lawyer. *See* Dckt. No. 11. But he later withdrew because of a potential conflict in June 2018. *See* Dckt. No. 20. Judge Tharp appointed a third lawyer in mid-June 2018. *See* Dckt. No. 22. That appointment lasted longer, but ended in the same place. The third attorney withdrew in May 2019. *See* Dckt. No. 48. On May 14, 2019, Judge Tharp appointed the fourth (and current) lawyer for Plaintiff. *See* Dckt. No. 50.

After reassignment, the fourth attorney filed a motion to withdraw based on differences in litigation strategy (Dckt. No. 62), which this Court denied without prejudice. *See* Dckt. No. 68. Counsel later filed another motion to withdraw (Dckt. No. 69), which this Court denied. *See* Dckt. No. 73.[1]

Plaintiff has had many lawyers. But none of them acted on Judge Tharp's important notification at the outset of the case about the passing of Dr. Obaisi. The issue did not surface

---

[1] The Court calls attention to the fact that Plaintiff missed the deadline for substitution under Rule 25(a)(1) long before the appointment of his current counsel, the fourth attorney appointed by the Court.

2

again until July 1, 2020, when Plaintiff finally filed a motion to substitute the estate as a defendant. *See* Dckt. No. 93.

Rule 25 governs how to proceed when a party passes away. "If a party dies and the claim is not extinguished, the court may order substitution of the proper party." *See* Fed. R. Civ. P. 25(a)(1). A motion for substitution may be made by any party or by the decedent's successor or representative. *Id.* But there is a deadline: three months. *Id.* "If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." *Id.*

Plaintiff acknowledges that Dr. Obaisi passed away years ago. But he suggests that the 90-day deadline in Rule 25 does not apply because there was no "service of a statement noting the death." *See* Pl.'s Mtn., at ¶ 15 (quoting Rule 25(a)(1)). Plaintiff believes that the Rule "assumes that a party or the decedent's successor or representative would file a statement noting the death." *Id.*

It is true that none of the parties filed a suggestion of death in this case, and neither did the estate. But it makes no difference. Rule 25(a)(1) allows a party or a representative to make a motion for substitution. But it does not say that a statement of death counts only if it is filed by a party or representative. The text of the Rule simply refers to a "statement" about the death, without specifying who can file it. *See* Fed. R. Civ. P. 25(a)(1). It refers to a statement but does not require any particular speaker.

The Court itself filed a statement about the death. Almost from day one, Judge Tharp called attention to the fact that Dr. Obaisi had passed away. Judge Tharp entered a minute order about the death on April 18, 2018, the same day that it appointed the second attorney. *See* Dckt. No. 11. The Court highlighted the Suggestion of Death filed in another case, and even provided

the case name and number. *Id.* The Court even drew attention to information that the estate had pulled together about how to handle "service of process and substitution of a representative of the estate." *Id.*

The Court's minute order counts as a "statement" about the death. *See* Fed. R. Civ. P. 25(a)(1). The Court stated that Dr. Obaisi had passed away. And the Court suggested what should happen next, by pointing to a protocol for substitution. *Id.* There was "service" of the minute order, too. The Court mailed notice, and Plaintiff's counsel was registered for ECF. That service satisfied Rule 5 and thus satisfied Rule 25(a)(3). *See* Fed. R. Civ. P. 25(a)(3) ("A motion to substitute . . . must be served on the parties as provided in Rule 5 . . . . A statement noting death must be served in the same manner.").

It is hard to see why a statement by a party should count, but a statement by the Court should not. If anything, a statement by the Court should count more rather than less.

So the Court's minute order fits within the text of Rule 25(a)(1). The text is dispositive, but for what it is worth, the minute order satisfied the purpose of Rule 25, too. The apparent goal is to alert everyone when a party passes away, so that they can take appropriate steps without delay. The Rule requires notice so that parties can take prompt action. The Court's minute order did that, and then some. The Court alerted everyone that a party had passed away, and thus started the clock ticking on the need for substitution.

Plaintiff then argues for an extension of the 90-day deadline under Rule 6(b)(1)(B). That Rule provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B). Rule 6 applies to a motion for substitution under Rule 25, and thus empowers the Court to extend the 90-day deadline if

4

there is a showing of "excusable neglect." *See Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993).

To find "excusable neglect," courts consider "all relevant circumstances surrounding the party's neglect, including the prejudice to the non-movant, length of delay, and reason for delay." *Bowman v. Korte*, 2020 WL 3455792, at *2 (7th Cir. 2020); *see generally Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (explaining that a decision about excusable neglect "is at bottom an equitable one"). Plain neglect is not enough – the neglect must be *excusable*. *See Nestorovic v. Metro. Water Reclamation Dist. of Greater Chicago*, 926 F.3d 427, 432 (7th Cir. 2019); *Satkar Hosp., Inc. v. Fox Television Holdings*, 767 F.3d 701, 708 (7th Cir. 2014). "Neglect is excusable (though not justifiable – 'neglect' implies lack of justification) if there is a reason, which needn't be a compelling reason, to overlook it." *United States v. McLaughlin*, 470 F.3d 698, 700–01 (7th Cir. 2006).

Plaintiff has not come close to demonstrating excusable neglect. In fact, Plaintiff barely gives a reason for the neglect at all. Plaintiff points to the fact that he had a "succession of lawyers appointed to represent him." *See* Pl.'s Mtn., at 7 (Dckt. No. 93). If anything, that point cuts against him. The Court appointed a string of legal professionals, all of whom were acquainted with the Federal Rules and capable of reviewing this Court's docket. The minute order about "substitution" in April 2018 put counsel on notice of the need for substitution, above and beyond the notice provided in the Federal Rules.

The undercurrent seems to be that counsel simply overlooked the issue and missed the deadline under the Federal Rules. "Generally, the failure to apprehend the operative federal rules is no excuse for noncompliance." *See Peters v. Wal-Mart Stores East, LP*, 2013 WL 1150224, at *4 (7th Cir. 2013). "The excusable neglect standard can never be met by a showing of inability

5

or refusal to read and comprehend the plain language of the federal rules." *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996) (citation omitted). Simply put, an "accountable lapse is not excusable neglect." *Id.*

The length of the delay weighs heavily against a finding of excusable neglect. The Court alerted all parties about the passing of Dr. Obaisi in April 2018 – 27 months ago. By comparison, Rule 25(a)(1) requires action within 3 months. Plaintiff waited a period of time equal to nine times the deadline (27 months instead of 3 months) before attempting substitution. The deadline passed two years ago. If missing the deadline by two years is excusable, it is not much of a deadline.

Meanwhile, the estate lost any opportunity to participate in this case in the past two years. In fact, based on the Court's review of the docket, it appears that the estate was never served with process, which is an independent ground for dismissal. *See* Fed. R. Civ. P. 4(m). (And if the estate was served, there is no proof of service on the docket, in violation of Rule 4(l)(1).). The parties do not discuss the issue of prejudice in detail. But it is fair to believe that an estate needs to know about possible liabilities. Even if the estate would be indemnified, it is possible that the lawsuit could impact the estate's interests. For example, plaintiff seeks punitive damages. *See* First Am. Cplt., at 11 (Dckt. No. 71).

Even if the estate would suffer no prejudice (for the sake of argument), the lack of prejudice is not dispositive. The lack of prejudice "will not suffice if no excuse at all is offered or if the excuse is so threadbare as to make the neglect inexplicable." *McLaughlin*, 470 F.3d 700–01. And here, Plaintiff has offered no excuse for waiting so long.

The Court shares Plaintiff's desire to decide cases on the merits when possible. But deadlines matter, too. District courts cannot function if parties disregard deadlines or play by

their own set of rules. If parties do not follow the rules, litigation would go off the rails. Also, deciding cases on the merits presupposes that the right parties are brought into the case in the first place. And here, Plaintiff has not offered any excuse for his two-year neglect.

The motion for substitution is denied. Plaintiff did not substitute the estate as a defendant by the deadline set by Rule 25(a)(1), and has not demonstrated excusable neglect under Rule 6(b)(1)(B). Defendant Obaisi is therefore dismissed.

Date: July 8, 2020

Steven C. Seeger
United States District Judge